## GEORGE W. MALONE v. PATHE EXCHANGE, INC.[1]

### January 3, 1919.

### No. 20,996.

**Foreign corporation — branch manager a general agent — authority.**

    Defendant, a New York corporation, maintained a branch office in Minneapolis. Its branch manager had the handling of all affairs relating to defendant's business in certain counties in several states. Such manager *held* to be a general agent, with authority to bind the defendant for services of plaintiff, rendered under a verbal arrangement with the manager.

Action in the municipal court of Minneapolis to recover $336.20 for services and expenses. Defendant in its answer alleged that while plaintiff was in its employ, plaintiff borrowed certain sums of money and that he still owed defendant thereon a balance of $556.02, but that to permit the court to have jurisdiction defendant was willing to waive all in excess of $500, for which defendant demanded judgment. The case was tried before Bardwell, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for plaintiff for $208.73. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*B. M. Goldman,* for appellant.

*John F. Bernhagen* and *P. W. Viesselman,* for respondent.

[1]Reported in 170 N. W. 215.

QUINN, J.

Defendant, a New York corporation, was engaged in the manufacture, sale and rental of moving picture productions, with its principal place of business in that state. It had a branch at Minneapolis which had for its territory, certain counties in Michigan, Wisconsin, Minnesota, the Dakotas and Montana.

By this action the plaintiff seeks to recover from the defendant for certain services which he claims to have rendered for defendant's Minneapolis branch between March 6 and April 8, 1916, and for railway fare, under an oral agreement entered into between himself and S. B. Sampson as defendant's branch manager. The plaintiff recovered a verdict for $208.73, and from an order denying its alternative motion for judgment or a new trial defendant appeals.

At the trial it was, of course, incumbent upon the plaintiff to prove not only the agreement of employment but also that Sampson, with whom the alleged agreement was made, had authority to act for and bind the defendant. Accordingly testimony was offered along these lines. No objection thereto was made upon the ground that the same was not admissible under the pleadings, but objection was made as tending to modify and vary a written contract of employment then existing between the parties by a verbal arrangement. This objection was overruled and the testimony received. Throughout the trial the authority of Sampson to make the agreement contended for by the plaintiff was stoutly denied. It appears that on October 4, 1915, plaintiff entered the employment of defendant under a written contract bearing that date, as a solicitor and salesman of the rental of its motion picture productions in the Minneapolis branch territory, on a commission basis. Under the terms of this contract the plaintiff had no right to receive or collect any money going to the defendant as rental for its productions, or otherwise. Upon the trial, as a witness called by the defendant, Sampson testified, in effect, that on October 4, 1915, he was manager of the defendant's Minneapolis branch; that his duties as such were the handling of all the business relating to the Pathé Exchange, Incorporated, in the territory covered by its Minneapolis branch, and that on that day he executed the solicitor's written contract between the plaintiff and defendant above referred to.

It is contended on behalf of the plaintiff that he entered into an oral agreement with Sampson as defendant's manager about the middle of February, 1916, whereby plaintiff was, in addition to and aside from his duties under his contract of October 4, to book, post bills for and act as general utility man in exploiting that special feature picture known as "Madam X," then about to be released by the defendant, and to look after the tickets and to collect and remit to defendant the receipts therefrom, for which the defendant was to pay him $50 per week and his railway fare; that on February 23, thereafter, Sampson sent plaintiff the following letter:

"You have our permission to book MADAM X on a fifty fifty proposition, or better, provided you are able to see to the box office returns yourself without interfering with your soliciting further business. Kindly let us know where you expect to start along these lines, and the amount of advertising matter desired, and all particulars so that arrangements can be made not only to get the money out of this production in your territory, but also to get further contracts from your patrons.

"Very truly yours,
"PATHE EXCHANGE, INC.
"(S. B. Sampson)
"Branch Mgr."

Subsequent to the writing of that letter defendant forwarded to the plaintiff advertising matter for Madam X which he used at Wausau in the state of Wisconsin; that on March 6 Mr. Sampson went to Wausau to attend the first or opening exhibition of the picture in the Minneapolis territory; that plaintiff's wife was present and attended to the ticket sales, the collection of plaintiff's share of the receipts, and the remittance thereof, as plaintiff had informed Sampson she would do. This she continued to do at each show during the exhibition of Madam X. Plaintiff claims that, pursuant to said oral agreement, he exhibited Madam X, collecting and remitting for receipts therefrom to defendant each day from March 6 to April 8, and that the defendant is indebted to him therefor in the sum of $336.20, including railway fare. The jury apparently allowed the plaintiff that amount less $127.47, overdrawn on account of the contract of October 4.

The defendant does not deny but that the plaintiff rendered the services and expended the money contended for, but it denies that the same were done under an oral agreement. Its contention is that all the work done or money expended by the plaintiff in exploiting Madam X was under the contract of October 4, and that plaintiff has been paid in full therefor. Defendant denies the oral contract in toto, and insists that if Sampson ever entered into the same he had no authority so to do.·

As branch manager Sampson had the handling of all affairs relating to defendant's business in the territory covered by the Minneapolis branch. His was a general agency. He had executed the contract of October 4, which defendant insists was valid and binding. No other officer of defendant participated therein. By its verdict the jury found that he entered into the oral contract with the plaintiff.

We have, then, the pertinent inquiry: Did Sampson exceed his authority as general agent in entering into the oral contract contended for, and if so did the defendant thereafter ratify the same so as to make itself liable for the services rendered and the money expended thereunder by the plaintiff? We answer the first query in the negative. The oral contract was for services outside of those covered by the written contract. It called for a different class of work, to be paid for upon a different basis. It was not to be undertaken if it, in any way, interfered with the performance of plaintiff's duties under his former contract. It was in addition to the work provided for under the written instrument. So far as Sampson's authority is involved the case is as though he, as general agent, had engaged some lads to post bills for his company. It can hardly be said that a general agent would not have such authority. Nor can it be said that the defendant was without notice of such contract and the services which were being performed thereunder. The work required the services of more than one person. In order to overcome this, plaintiff's wife, without pay, looked after the ticket sales, collections and remittances, making reports thereon to the defendant, work which the plaintiff had no authority to interfere with under the written contract. Money was retained therefrom for plaintiff's traveling expenses. No complaint was made. The reports were received with apparent satisfaction except as to the amount of the receipts. The cause

was fairly submitted to the jury and we discover no reversible error in the record.

Affirmed.